Nathaniel H. Akerman
Joshua Colangelo-Bryan
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Tel: (212) 415-9200

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
: 
KNOWLEDGE DELIVERY SYSTEMS, INC., : Case No. 14-cv-7964
:
Plaintiff, :
: ANSWER TO
- against - : COUNTERCLAIMS
:
KIMBERLY (BATES) HARRIS and JANE KENNEDY, :
:
Defendants. :
:
---------------------------------------------------------------------x

Knowledge Delivery Systems, Inc. ("KDS"), by its attorneys, Dorsey & Whitney LLP, answers the allegations and counterclaims contained in the Answers and Affirmative Defenses to the Amended Complaint of Knowledge Delivery Systems, Inc. by defendants Kimberly (Bates) Harris ("Harris") and Jane Kennedy ("Kennedy"), in correspondingly numbered paragraphs as follows:

1. KDS admits the allegations contained in paragraph 1, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that Harris is the Chief Executive Officer of Elevated Achievement Group ("EAG").

2. KDS admits the allegations contained in paragraph 2, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that Kennedy is the Chief Operating Officer of EAG.

3. The allegations contained in paragraph 3 state a conclusion of law to which no response is required.

4. The allegations contained in paragraph 4 state a conclusion of law to which no response is required.

5. KDS admits the allegations contained in paragraph 5.

6. KDS denies the allegations contained in paragraph 6, except admits that KDS agreed to provide professional development services to the Chicago Public Schools' ("CPS") Office of Strategic School Support Services ("OS4") during the 2013-14 school year, and CPS agreed to pay $6.4 million for KDS's services.

7. KDS admits the allegations contained in paragraph 7, except denies that Harris was responsible for initially procuring the contract between KDS and CPS or managing it alone.

8. KDS denies the allegations contained in paragraph 8, except admits that Harris and Kennedy had responsibility for identifying CPS's needs and selecting and retaining subcontractors as needed to meet those needs.

9. KDS denies the allegations contained in paragraph 9, except denies having knowledge or information sufficient to form a belief as to the truth of the allegations that Harris had previously worked with both Bob Crowe ("Crowe") and Kelly Smith ("Smith") "on other projects and believed their skills, abilities and knowledge would be a great asset to CPS."

10. KDS admits the allegations contained in paragraph 10.

11. KDS denies the allegations contained in paragraph 11, except denies having knowledge or information sufficient to form a belief as to the truth of the allegations as to when Smith and Crowe resigned from ALS.

12. KDS denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12.

13. KDS denies the allegations contained in paragraph 13, except admits that Harris had arranged for the Sentarus Group ("Sentarus") to provide invoicing service for an independent contractor (not Smith or Crowe) who had provided services on behalf of KDS.

14. KDS denies the allegations contained in paragraph 14.

15. KDS denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15.

16. KDS denies the allegations contained in paragraph 16, except admits that on or about May 31, 2014, Harris and Kennedy resigned from KDS, effective June 13, 2014.

17. KDS denies the allegations contained in paragraph 17, except admit that Harris and Kennedy offered to continue to work for KDS as independent contractors through EAG.

18. KDS denies the allegations contained in paragraph 18, except admits that an email was sent to KDS staff on June 3, 2014.

19. KDS denies the allegations contained in paragraph 19.

20. KDS admits the allegations contained in paragraph 20.

21. KDS denies the allegations contained in paragraph 21.

22. KDS denies the allegations contained in paragraph 22.

23. KDS denies the allegations contained in paragraph 23.

24. KDS denies the allegations contained in paragraph 24, except that CPS refused to renew its contract with KDS for a second year.

25. KDS denies the allegations contained in paragraph 25, except admit that CPS refused to renew its contract with KDS.

26. KDS denies the allegations contained in paragraph 26, except admits KDS refused to pay Sentarus.

27. KDS admits the allegations contained in paragraph 27, except denies having knowledge or information sufficient to form a belief as to what work, if any, Smith and Crowe performed.

28. KDS admits the allegations contained in paragraph 28, except denies that Smith and Crowe were working as independent contractors, because in fact they were working for EAG.

29. KDS denies the allegations contained in paragraph 29.

30. KDS denies the allegations contained in paragraph 30.

31. KDS denies the allegations contained in paragraph 31.

32. KDS admits the allegations contained in paragraph 32.

33. KDS admits the allegations contained in paragraph 33, except denies that "the bonus was earned and payable at the time the school district customer committed funds to be expended and paid to KDS."

34. KDS denies the allegations contained in paragraph 34, except admits that Harris played a role in the procurement of KDS's contract with CPS.

35. KDS denies the allegations contained in paragraph 35.

36. KDS denies the allegations contained in paragraph 36.

37. KDS denies the allegations contained in paragraph 37, except admits that the contract with CPS had an initial value of $6 million; however, KDS invoiced CPS for an amount considerably less than $6 million, due to Defendants' malfeasance.

38. KDS admits the allegations contained in paragraph 38.

39. KDS denies the allegations contained in paragraph 39.

40. KDS denies the allegations contained in paragraph 40.

41. KDS denies the allegations contained in paragraph 41.

## COUNT I

42. KDS repeats and re-alleges its responses to paragraphs 1-41 as if fully set forth herein.

43. KDS denies the allegations contained in paragraph 43, except admits that the Strategic Sales and Engagement Management Plan is an enforceable contract, the terms of which speak for themselves.

44. KDS denies the allegations contained in paragraph 44.

45. KDS denies the allegations contained in paragraph 45.

46. KDS denies the allegations contained in paragraph 46.

47. KDS denies the allegations contained in paragraph 47.

## COUNT II

48. KDS repeats and re-alleges its responses to paragraphs 1-47 as if fully set forth herein.

49. KDS denies the allegations contained in paragraph 49.

50. KDS denies the allegations contained in paragraph 50.

51. KDS denies the allegations contained in paragraph 51.

52. KDS denies the allegations contained in paragraph 52.

53. KDS denies the allegations contained in paragraph 53.

54. KDS admits the allegations contained in paragraph 54.

55. KDS denies the allegations contained in paragraph 55.

## COUNT III

56. KDS repeats and re-alleges its responses to paragraphs 1-55 as if fully set forth herein.

57. KDS admits the allegations contained in paragraph 57.

58. KDS admits the allegations contained in paragraph 58, except denies having knowledge or information sufficient to form a belief as to the truth of the allegation that "Harris traveled frequently" for KDS, as opposed to for EAG.

59. KDS denies having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 59.

60. KDS admits the allegations contained in paragraph 60.

61. KDS admits that the Strategic Sales and Engagement Management Plan speaks for itself.

62. KDS denies the allegations contained in paragraph 62, except admits that Harris terminated her employment with KDS effective as of June 13, 2014.

63. KDS denies the allegations contained in paragraph 63.

64. KDS denies the allegations contained in paragraph 64.

65. KDS denies the allegations contained in paragraph 65.

66. KDS denies the allegations contained in paragraph 66.

## COUNT IV

67. KDS repeats and re-alleges its responses to paragraphs 1-66 as if fully set forth herein.

68. KDS denies the allegations contained in paragraph 68.

69. KDS denies the allegations contained in paragraph 69.

70. KDS denies the allegations contained in paragraph 70.

71. KDS denies the allegations contained in paragraph 71.

72. KDS denies the allegations contained in paragraph 72.

73. KDS denies the allegations contained in paragraph 73.

74. KDS denies the allegations contained in paragraph 74.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE
**(Failure to State a Claim for Relief)**

75. The Defendants have failed to state a claim against KDS upon which relief may be granted.

### SECOND DEFENSE
**(Breaches of Duties)**

76. The Defendants are barred from recovery against KDS by the virtue of their material breaches of their duties, including their fiduciary duty to KDS, as set forth in KDS's complaint.

### THIRD DEFENSE
**(Waiver, Estoppel, Unclean Hands)**

77. The Defendants are barred from recovery against KDS, in whole or in part, by the doctrines of waiver, estoppel, and/or unclean hands.

### FOURTH DEFENSE
**(Lack of Malice)**

78. KDS did not act with malice, ill will or in reckless disregard of the Defendants' rights with respect to any actions affecting them and, with respect to any such actions, KDS acted lawfully, properly and in good faith.

## FIFTH DEFENSE
### (Set Off)

79. The Defendants owe money to KDS that remains unpaid. Any amount that may be deemed owing by KDS to the Defendants should be set off by the amounts that the Defendants owe KDS.

## SIXTH DEFENSE
### (Recoupment)

80. KDS is entitled to recoupment of amounts owed by the Defendants to it.

## SEVENTH DEFENSE
### (Injury Not Caused by KDS)

81. The Defendants were not injured by reason of any action taken by KDS or by reason of any action that KDS failed to take.

## EIGHTH DEFENSE
### (Injury Unrelated to KDS)

82. Any damage or injury the Defendants may have suffered was caused in whole or in part by persons or factors unrelated to KDS including by the Defendants themselves.

## NINTH DEFENSE
### (Failure to Mitigate Damages)

83. On information and belief, the Defendants have failed to mitigate any damages and failed to exercise due diligence in an effort to mitigate any damages.

## TENTH DEFENSE
### (Truth Defenses)

84. The alleged defamatory statements are true.

## ELEVENTH DEFENSE
### (Privilege)

85. The alleged defamatory statements are privileged and thus not actionable.

## RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES

86. KDS has not knowingly or voluntarily waived any applicable affirmative defenses and reserves the right to assert and rely upon such additional affirmative defenses to the Defendants' counterclaims, the applicability of which may become apparent after discovery commences in this action.

WHEREFORE, KDS respectfully requests, in addition to the relief requested in its Complaint, the following:

(a) an Order dismissing with prejudice the Defendants' counterclaims;

(b) an award of attorneys' fees, interest, costs, disbursements, and

(c) such other and further relief as this Court deems just and proper.

Dated: New York, New York
January 7, 2015

DORSEY & WHITNEY LLP

By: _____
Nathaniel H. Akerman
Joshua Colangelo-Bryan
51 West 52nd Street
New York, New York 10019
Telephone: (212) 415-9200

*Attorneys for Plaintiff/Counterclaim-Defendant
Knowledge Delivery Systems, Inc.*

4838-9352-5281\1